# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SILVER STATE LAND, LLC,

                Plaintiff,

                v.

TOMMY P. BEAUDREAU, in his official
capacity as Acting Assistant Secretary of Land
and Minerals Management, U.S. Department
of the Interior, *et al.*,

                Defendants.

Civil Action No. 13-cv-00717 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Several days before the plaintiff, Silver State Land, LLC, expected to receive the patent

for approximately 480 acres of federal land located in the City of Henderson, Nevada, the patent

was withdrawn and the plaintiff was not permitted to consummate the purchase of the land.  The

plaintiff thereafter filed this action against Tommy P. Beaudreau, in his official capacity as

Acting Assistant Secretary, Land and Minerals Management ("LMM"), U.S. Department of the

Interior ("DOI"), and Neil Kornze, in his official capacity as Principal Deputy Director, DOI's

Bureau of Land Management ("BLM"), (collectively "defendants") to (1) set aside the

determination of the LLM to withdraw the sale of a land patent; and (2) allow the sale to proceed

as required by law.  Pending before the Court is the plaintiff's motion to supplement the

administrative record with, or allow for extra-record review or judicial notice of, a Nevada state

court order dismissing fraud claims against the plaintiff.  Pl.'s Mot. to Compel Suppl. of A.R. or

Extra-R. Review or Judicial Notice ("Pl.'s Mot."), at 1, ECF No. 26.  According to the plaintiff,

this excluded order eliminated the underlying reason for the LLM's determination and,

consequently, is "most relevant to Defendants' arbitrary and capricious decision."   Pl.'s Mem.

Supp. Mot. to Compel Supplementation of A.R. or Extra-R. Review or Judicial Notice ("Pl.'s Mem."), at 8, ECF No. 26-1. For the reasons set forth below, the plaintiff's motion is denied.

## I. BACKGROUND

In September 2011, the City of Henderson, Nevada ("Henderson" or "the city") nominated for sale, pursuant to the Southern Nevada Public Land Management Act ("SNPLMA"), an approximately 480-acre parcel of public land ("the Land") under the administration of BLM. *Id.* ¶ 8. Henderson requested that BLM conduct a direct sale of the land to Las Vegas National Sports Center, LLC ("LVNSC"), which had a Development Agreement with the city to "develop a regional mixed use project including professional sports venues on the Land" ("Development Agreement"). *Id.* BLM did not accede to this request but instead published, on April 4, 2012, a Notice of Realty Action for a modified competitive bidding process in accordance with BLM regulations. *Id.* ¶¶ 9-10.

Meanwhile, in early 2012, with the consent of both Henderson and BLM, the plaintiff was substituted for LVNSC as the sale nominee. *Id.* ¶ 8. Both LVNSC and the plaintiff are wholly owned by Las Vegas National Sports Center (Holding) LLC. *Id.* Henderson identified the plaintiff to BLM as the "designated bidder," allowing the plaintiff to match the high bid. *Id.* ¶ 10.

On June 4, 2012, the plaintiff submitted a bid to purchase the land for $10,560,000, which was "the fair market value as previously determined by the BLM under an appraisal prepared by a third party and reviewed and approved by the Office of Valuation Services, [DOI]." *Id.* ¶ 11. No other bids were submitted and, on June 12, 2012, BLM confirmed that the plaintiff was the successful bidder. *Id.* ¶¶ 11-12. On November 28, 2012, as a requirement of sale, the plaintiff timely deposited into an escrow the amount of $8,428,000, thereby triggering

BLM's obligation to issue a patent, which would give the plaintiff the title to the land, within 30 days. *Id.* ¶¶ 13-14. On the same day the escrow deposit was made, the plaintiff's affiliated company, LVNSC, terminated its Development Agreement with Henderson. *Id.* ¶ 15. The plaintiff offers as an explanation for the termination that "[b]oth Henderson and LVNSC had reciprocal and unilateral rights to terminate the Development Agreement if either party believed the terms of the Development Agreement made the project non-viable." *Id.* The plaintiff further alleges that "[t]he termination of the Development Agreement affected the potential issuance by Henderson of revenue bonds for the project but it did not affect the zoning of the Land . . . [which] remains . . . zoned to be used for the development of a mixed use project with sports venues and that designation cannot be changed by any party other than Henderson." *Id.*

On November 29, 2012, the day following the plaintiff's payment of the escrow deposit and its affiliate's termination of the Development Agreement, Henderson sent a letter to BLM requesting that the issuance of the land patent to the plaintiff be postponed. *Id.* ¶ 16. In order to facilitate its discussions with Henderson, on December 2, 2012, the plaintiff agreed to extend the date by when BLM was required to transfer the land patent until the first week of February 2013. *Id.* ¶ 17. The plaintiff agreed to a second escrow extension until March 29, 2013, after Henderson filed suit, on January 28, 2013, in Nevada state court against the plaintiff "alleging fraud related claims and contract claims." *Id.* ¶ 18.

Before the lapse of the second closing date extension, the Nevada state court in *City of Henderson v. Milam* ("*City of Henderson*"), No. A-13-675741-B (Nev. Dist. Ct., Clark Cty), entered an order, on March 7, 2013, dismissing, without prejudice, the fraud related claims against the plaintiff ("Nevada Order"). *Id.* ¶ 20. Shortly thereafter, on March 14, 2013, the plaintiff and Henderson reached a settlement regarding the remaining contract claims and

Henderson provided a copy of the settlement agreement to DOI's Solicitor's Office.  *Id. ¶* 21.  In the agreement, the "parties agreed that the settlement agreement was not to be considered an admission or acknowledgement as to liability or damages related to claims by either party."  *Id.* Henderson advised BLM, by a letter "sent" on April 5, 2013, that the city no longer opposed the issuance of the patent to the plaintiff.  *Id.* ¶ 22.  In view of these developments, the plaintiff agreed to a third extension of the closing with BLM until May 13, 2013.  *Id.*

On May 10, 2013, three days before the scheduled date for the issuance of the patent, LMM issued a Decision Memorandum adopting an earlier recommendation of BLM.  *See* A.R. SSL00133.  Specifically, in its Decision Memorandum, the LLM asserted jurisdiction over the matter and directed  BLM to: "(i) not issue the patent to [the plaintiff], (ii) terminate the sale process, and (iii) take the steps necessary to return the purchase deposit and bid guarantee to [the plaintiff], as expeditiously as practicable."  *Id.*; Compl. ¶¶ 25-26.  Consistent with these directions, BLM did not deliver the patent to the plaintiff by the closing date.  Compl. ¶ 27.

The plaintiff filed an action for declaratory and injunctive relief against the defendant on May 15, 2013.  *See generally* Compl.  The defendants timely lodged the administrative record in this case on November 5, 2013, ECF No. 25, which record the plaintiff argues is incomplete for failing to include the Nevada Order dismissing the fraud related claims brought against the plaintiff in the *City of Henderson* litigation.  The plaintiff's pending motion to supplement the administrative record or allow extra-record review or judicial notice of the Nevada Order, is now fully briefed for resolution.

## II.    LEGAL STANDARD

Under the APA, "the court shall review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  "The record consists of the order involved, any findings or reports on

which that order is based, and 'the pleadings, evidence, and other parts of the proceedings before the agency.'" *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting Fed. R. App. P. 16(a)). As the Supreme Court explained, "[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985). Otherwise, the reviewing court would consider *de novo* material not included in the agency record and "reach its own conclusions based on such an inquiry." *Id.* at 744. This is inconsistent with applying the arbitrary and capricious standard, where "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Hence, "[i]t is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997); *see also Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325 (D.C. Cir. 1984) (en banc) ("Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President."), *vacated en banc in part on other grounds*, 760 F.2d 1320 (D.C. Cir. 1985). When "the record before the agency does not support the agency action, [] the agency has not considered all relevant factors, or [] the reviewing court simply cannot evaluate the challenged

agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co.*, 470 U.S. at 744.

Supplementation of the administrative record is only appropriate in exceptional or "unusual" circumstances. *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) ("[W]e do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'" (quoting *Tex. Rural Legal Aid v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991))); *Am. Wildlands v. Kempthorne*, 530 F.3d at 1002; *see also Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009) ("A court that orders an administrative agency to supplement the record of its decision is a rare bird."). The D.C. Circuit has recognized three narrow instances in which supplementation of an administrative record may be appropriate before reaching the merits of an APA challenge to agency action: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach*, 628 F.3d at 590 (quoting *Am. Wildlands*, 530 F.3d at 1002); *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

Underlying these exceptions, however, is the "strong presumption" that an agency has properly compiled the entire record of materials that it considered, either directly or indirectly, in making its decision. *See Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) ("Although an agency may not unilaterally determine what constitutes the administrative record, the agency enjoys a presumption that it properly designated the administrative record absent

clear evidence to the contrary.").  To overcome that presumption, a plaintiff "must put forth concrete evidence that the documents it seeks to add to the record were actually before the decisionmakers." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (internal quotation and citations omitted).

In a case involving a "serious question" about "the procedural validity" of the challenged agency action, the D.C. Circuit listed eight circumstances in which consideration of extra-record evidence may be appropriate.[1]  *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).  More recently, the D.C. Circuit has cautioned that the exceptions announced in *Esch* are "narrow" and that, "at most [*Esch*] may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review."  *Hill Dermaceuticals, Inc.*, 709 F.3d at 47 (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.") (internal quotations omitted)). *See also Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1380-81 (Fed. Cir. 2009) (rejecting reliance on *Esch* because "the eight exceptions to the rule against extra-record evidence described in *Esch* originated" in a law review article that predated *Florida Power & Light Company*, 470 U.S. at 743-44, the *Esch* exceptions "are so broadly-worded as to risk being incompatible with the limited nature of arbitrary and capricious review, particularly if construed

_____

[1] The D.C. Circuit identified the following eight circumstances in *Esch*, 876 F.2d at 991 (quoting Steven Stark & Sarah Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 ADMIN L. REV. 333, 345 (1984)): "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.'"

to allow the introduction of new evidence or theories not presented to the deciding agency," and "*Esch*'s vitality even within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence") (internal quotations and citations omitted); *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 156–57 (noting that the D.C. Circuit "appears to have narrowed" the *Esch* exceptions).

In any event, "reliance on extra-record evidence 'is the exception, not the rule.'" *API v. SEC*, 714 F.3d 1329, 1334 (D.C. Cir. 2013) (quoting *Theodore Roosevelt Conservation Partnership*, 616 F.3d at 514); *see also Zemeka v. Holder*, 963 F. Supp. 2d 22, 25 (D.D.C. 2013) ("Under exceptional circumstances, courts may permit a party to present 'extra-record' evidence — 'evidence outside of or in addition to the administrative record that was not necessarily considered by the agency.'" (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006))). Moreover, "[u]nderlying all of these exceptions is the assessment that 'resort to extra-record information [is necessary] to enable judicial review to become effective.'" *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008) (quoting *Esch*, 876 F.2d at 991) (alterations in original).

## III.    DISCUSSION

In support of its motion to supplement the administrative record or allow extra-record review or judicial notice of the Nevada Order, the plaintiff makes five arguments. The plaintiff argues that supplementation of the administrative record with the Nevada Order is necessary because: (1) the defendants "deliberately or negligently excluded" this Order "that may have been adverse to its decision," Pl.'s Mem. at 8; (2) the Order constitutes "background information . . . needed to determine whether the agency considered all the relevant factors," *id*. at 11; and (3) failure to consider the Nevada Order would "frustrate judicial review," *id*. at 12. The plaintiff

also contends that extra-record review of the Order is appropriate because "the procedural validity of an agency's action is in question." Pl.'s Mem. at 13. Finally, the plaintiff posits that if the Court declines to supplement the administrative record or grant extra-record review, "[i]t is beyond dispute that judicial notice of the [Nevada] Order is appropriate" as "the [Nevada] Order is the type of official government document frequently accorded judicial notice." Pl.'s Mem. at 14. The Court finds all of the plaintiff's arguments unavailing for the reasons explained below.

### A. SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD IS NOT WARRANTED

The gravamen of the plaintiff's argument for supplementation of the administrative record is that "[g]iven the direct relevance of Henderson's fraud allegations against [the plaintiff] to Defendants' rationale for the challenged decisions, it was unreasonable and negligent for Defendants to fail to review significant developments in that proceeding, including the court order dismissing the fraud claims." Pl.'s Mem. at 10. The plaintiff's criticism that exclusion of the Nevada Order renders that defendants' decision substantively unsound cautions against granting the pending motion since "the familiar rule that judicial review of agency action is normally to be confined to the administrative record . . . exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Esch*, 876 F.2d at 991.

Indeed, the relevant inquiry here is not what the plaintiff believes the agency should have considered prior to making its decision. As the defendants aptly explain, "the issue of what the Interior *should have* considered may ultimately bear on whether the agency action at issue was arbitrary and capricious [and] that is a merits argument that is wholly irrelevant to what the agency actually *did* consider during the time period at issue." Defs.' Opp'n Pl.'s Mem, ("Defs.' Opp'n"), at 9, ECF No. 27 (citing *Safari Club Int'l v. Jewell*, 960 F. Supp. 2d 17, 71 (D.D.C. 2013)) (emphasis in original). *See also Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp.

2d 40, 44 (D.D.C. 2008) (recognizing that whether defendants' failure to consider additional data rendered the agency decision arbitrary and capricious was a "merits argument in a discovery motion" and, consequently, "[t]he Court [was] not prepared to express an opinion on the propriety of the defendant's selection of data" during a motion to supplement the administrative record).

Rather than argue about what the agency should have considered in reaching the challenged decision, to establish a basis for supplementation of the administrative record, the plaintiff must show that the Nevada Order (1) was "deliberately or negligently excluded" because it was "adverse" to the challenged decision; (2) constitutes "background information" necessary "to determine whether the agency considered all the relevant factors;" or (3) is necessary "to explain administrative action" such that exclusion "frustrate[s] judicial review." *See City of Dania Beach*, 628 F.3d at 590. The plaintiff's arguments as to each of these circumstances are addressed in turn.

### 1. *The Defendants Did Not Deliberately or Negligently Exclude an Adverse Document*

The plaintiff argues, first, that supplementation of the administrative record is required because the defendants "deliberately or negligently excluded documents that may have been adverse to its decision." Pl.'s Mem. at 8. This argument is premised on the plaintiff's assumptions that (1) the defendants withdrew the land patent as a result of the fraud claims asserted against the plaintiff in the *City of Henderson* litigation; and (2) the defendants must have reviewed and considered the Nevada Order dismissing these fraud claims without prejudice. *See* Pl.'s Mem. at 1 ("the law does not permit [the defendants] to base the decision [to revoke the land patent] on alleged fraud claims against [the plaintiff], but keep out of the record the Order

10

that dismissed those same claims more than two months before [the defendants] made the challenged decision."). The defendants challenge the validity of both of these assumptions.

First, the defendants aver that "the driving factors underlying [their] decision to terminate the land sale" were "the lack of a Development Agreement [with the plaintiff's affiliate LVNSC] and public interest benefits" derived from the sale, not the fraud allegations against the plaintiff." Defs.' Opp'n at 9-10. While the defendants "recognized as an issue the state court fraud allegations," as part of the confluence of events surrounding the dissolution of the Development Agreement, the significant matter for BLM was the termination of the agreement, not the underlying reasons for the termination. The plaintiff disputes that the termination of the Development Agreement was the reason for the challenged agency decision, characterizing this justification as "demonstrably false." Pl.'s Reply at 2. Even if the plaintiff's characterization is correct, a motion to supplement the record is not the appropriate procedural mechanism to determine the precise reasons for the agency's decision. Ascertaining the reasons for the challenged agency action and evaluating the reasonableness of the action necessarily focuses on consideration of the merits of the plaintiff's claim.

In any event, the plaintiff's assumption in support of the pending motion that the primary reason for the challenged agency action was Henderson's assertion of fraud claims against the plaintiff—and that the defendants, therefore, should or must have considered the Nevada Order—is not persuasive for at least three reasons. First, the defendants' proffered rationale for withdrawal of the land patent due to the termination of the Development Agreement shows, at a minimum, that reasons other than the fraud claims may be underlying the challenged agency action.

Second, and related to the first reason, the defendants' proffered rational for revoking the land patent is bolstered by the allegations set out in the plaintiff's own Complaint. Specifically, the Complaint alleges that Henderson initially desired to convey the land by direct sale to the plaintiff's affiliate, LVNSC, with whom the city had a Development Agreement. Compl. ¶ 8. Pursuant to this Agreement, LVNSC was to "develop a regional mixed use project including professional sports venues on the Land" at issue. *Id.* The BLM rejected the city's initial direct sale proposal because "the Project did not rise to the level of a 'public project' required by the BLM regulations to support" such a transaction, *id.* ¶ 9, corroborating the defendants proffered rationale that the public benefits of any transaction were a significant consideration for BLM. Instead, BLM notified the city "that a modified competitive bidding process was appropriate." *Id.* The plaintiff, having been substituted as the sole nominee and being the only bidder in the modified sale process, was quickly deemed the successful bidder. *Id.* ¶¶ 8, 12. The rationale for both adopting a modified competitive bidding process and issuing the land patent to the plaintiff was immediately undercut, however, when on the exact same day that the plaintiff made the necessary deposit for the land, LVNSC terminated the Development Agreement with Henderson. *Id.* ¶¶ 14-15.

The chronology of events outlined in the Complaint lends credence to the defendants' assertion that the primary reason for not issuing the patent to the plaintiff was the loss of both the Development Agreement with LVNSC and the concomitant public benefits that would have derived from that agreement. Notably, if the fraud claims against the plaintiff were not the basis for the defendants' decision, a state court Order dismissing those claims is obviously not adverse, but merely irrelevant, to the challenged agency action.

Third, even if the fraud claims alleged in the state court proceeding were the basis for the challenged decision, the plaintiff's argument that the Nevada Order is "adverse" still falls short. The Nevada Order did not address the merits of the fraud allegations against the plaintiff since the Order merely dismissed those allegations *without prejudice*. Thus, the plaintiff's assertion that the allegations of fraud can "provide no basis for the ultimate decision reached by Defendants," is not so clear when the merits of those allegations were not reached. Pl.'s Mem. at 10.

Even assuming *arguendo* that the challenged decision was based on the fraud claims, rendering the Nevada Order somehow adverse to the withdrawal of the land patent, the plaintiff has failed to provide concrete evidence to prove its second assumption—that the defendants were actually aware of the Order prior to their decision. The defendants aver that "[t]he Nevada Order was not before [the agency] when it made its decision to terminate the land sale." Defs.' Opp'n, at 6. "Common sense dictates that the agency determines what constitutes the whole administrative record because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it—namely, were directly or indirectly considered." *Pac. Shores Subdivision, Cal. Water Dist.*, 448 F. Supp. 2d at 5 (citation and quotation marks omitted). While this "common sense" presumption may be rebutted, the defendants correctly point out that the plaintiff "has fallen short of carrying its burden of producing . . . concrete evidence that the Nevada Order was considered, either directly or indirectly, by agency decisionmakers." Defs.' Opp'n at 7-8.

Rather than providing concrete evidence, the plaintiff postulates that the defendants must have known about and considered the Nevada Order before making the challenged decision because the Administrative Record contains references to the fraud claims against the plaintiff.

Pl.'s Mem. at 8-10.  In particular, the plaintiff cites such references contained in: (1) BLM's

Memorandum, dated May 10, 2013 ("Recommendation Memorandum"), recommending that

LLM direct BLM not to issue the land patent to the plaintiff, A.R. SSL00003-8; (2) news articles

and the settlement agreement filed after the March 7, 2013 date of the Nevada Order, A.R.

SSL00197-214, 229-232, 566-567, 666-676, 838-839, 907-908, 1159-1131,1578-1580; (3)

contacts between Henderson and DOI officials about developments in the state court litigation,

A.R. SSL00142; and (4) the Nevada state court's public docket, Pl.'s Mem. at 10.  Given these

record references to the fraud claims, the plaintiff expresses incredulity that the "Defendants

were unaware that Henderson's fraud claims were dismissed," stating the view that this "notion

... is simply implausible," Pl.'s Mem. at 9.  Yet, the fact that the defendants had notice of the

fraud claims simply does not establish knowledge of the Nevada Order.  As the defendants

explain, "while the administrative record includes some documents from the City of Henderson

proceedings, it includes only those documents that the BLM considered directly or indirectly in

making the decision to terminate the sale . . . [and] [t]hese documents were considered because

they were provided to the BLM by the parties to the state court litigation."  Defs.' Opp'n at 11.

   While the plaintiff is correct that documents need not "be physically transmitted to an

agency for the documents to be included in an administrative record," Pl.'s Mem. at 11, this

argument misses the mark.  None of the references to the fraud claims in the record contravenes

the defendants' denial of considering the Nevada Order when making the challenged decision

nor the defendants' explanation that the only documents included in the administrative record

were those that Henderson disclosed through its alleged "close contact" with the defendants.

Thus, neither the documents in the administrative record from the state court proceeding nor

Henderson's contact with the defendants amounts to the requisite concrete evidence that the defendants knew of the Nevada Order.

The plaintiff's contention that the defendants must have known of the Nevada Order because "a cursory review of the Nevada District Court's public docket would have revealed" it, Pl.'s Mem. at 10, fares no better. The plaintiff's settlement agreement with Henderson, which agreement was indisputably known to the defendants and is included in the administrative record, made clear that "both parties agreed that the settlement agreement was not to be considered an admission or acknowledgement as to liability or damages related to claims by either party." Compl. ¶ 21. In short, this settlement agreement terminated the fraud claims without a resolution of the merits of those allegations. As a consequence, there was no need for the defendants to review the state court's public docket, as the settlement agreement provided sufficient notification that the claims in the Henderson litigation settled. In other words, knowledge of the settlement agreement rendered "[t]he Nevada Order dismissing the fraud allegations without prejudice" an "extra procedural note" and provided notice that the fraud allegations, whatever their merit, were no longer the subject of legal proceedings. *See* Defs.' Opp'n at 10-11.

In sum, there is simply no concrete evidence offered by the plaintiff to overcome the strong presumption that the record was properly designated. In fact, even the plaintiff acknowledges that "conspicuously absent from the record are any articles about the Court's dismissal of the City of Henderson's fraud claims [i.e., the Nevada Order]." *See* Pl.'s Mem. at 9. As the defendants could not deliberately or negligently exclude documents of which they were not aware, the plaintiff has not proven that the record should be supplemented on this basis.

## 2. The Nevada Order Is Not Necessary Background Information

The plaintiff's second argument is that supplementation is required because the Nevada Order provides background information "clearly essential to the challenged decisions" by "establishing that Henderson's fraud claims were baseless." Pl.'s Mem. at 11-12. In support of this contention, the plaintiff relies upon *American Wild Horse Preservation Campaign,* but that case is inapposite. The plaintiff in that case treated as part of the administrative record certain expert declarations, which the agency admittedly possessed, were referenced in timely-filed comments, were directly related to and adverse to the agency's decision and were undisputedly properly before the agency in closely related prior litigation. *See Am. Wild Horse Pres. Campaign v. Salazar*, 859 F. Supp. 2d at 43-44. In those circumstances, this Court denied the agency's motion to strike the expert declarations and considered the declarations an appropriate part of the record. By contrast, as discussed at length above, the defendants in this case aver that, prior to making the challenged decision, they were never aware of or in possession of the Nevada Order and the plaintiff has offered no concrete evidence to the contrary.

The plaintiff argues further that the Nevada Order is necessary background information because the document "should have informed Defendants' decision, and must be included in the administrative record." Pl.'s Mem. at 12.[2] As noted, whether the Nevada Order reflects events or matters that "should" have been considered veers into the merits of the plaintiff's underlying claim and is inappropriate for consideration on the pending motion. In any event, despite the plaintiff's vigorous arguments about the necessity of including the Nevada Order in the record,

---

[2] The plaintiff's citation to *Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975), does not help the plaintiff's position. Pl.'s Mem. at 12. In that case, the D.C. Circuit concluded that remand was necessary where the agency conceded that the entire administrative record had not been filed before the district court and that several documents "properly part of the administrative record" had been omitted. *Id*. Those circumstances are far different from the instant case where the defendants aver that the Nevada Order was never considered or part of the record before the agency when the challenged decision was made.

this two-page Order states merely that the fraud claims were dismissed *without prejudice.* The Order provides no explanation or reason whatsoever for the dismissal and therefore sheds no light on the underlying merits of the fraud claims. Moreover, to the extent that information about the status of fraud claims is, in the plaintiff's view, important background information, the settlement agreement, which is already part of the Administrative Record, sufficiently provides notice of that status. *See* Defs.' Opp'n at 10-11.

### 3. The Nevada Order Is Not Necessary For Adequate Judicial Review

Finally, the plaintiff's third ground for supplementation of the Administrative Record—that the Nevada Order is necessary or else judicial review will be frustrated, Pl.'s Mem. at 12—is similarly unavailing. The plaintiff contends that "[a]bsent consideration of the order dismissing the fraud claims, the Court could not meaningfully review," the plaintiff's challenge to the defendants' withdrawal of the land patent. *Id.* This argument significantly overstates the significance of the Nevada Order.

Documents may be added to the administrative record where denying the documents' relevance "would be inconsistent with rational decisionmaking by an administrative agency." *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 244 (D.C. Cir. 2008) (quoting *Kent County, Del. Levy Court v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992)). In this case, however, the Nevada Order is not particularly relevant or probative. A two-page Order dismissing claims *without prejudice* at an early stage of litigation before discovery, suggests only that the heightened pleading standard for fraud was not met. In addition, it bears repeating that the settlement agreement from the state court proceedings is in the Administrative Record and sufficiently reflects that the merits of the fraud claims were left unresolved, with no admission or acknowledgement of liability by the plaintiff. Should the fraud claims against the plaintiff be

deemed critical to the challenged decision, the defendants bear the risk that any strong reliance on settled fraud claims may undermine the reasonableness of the challenged decision. In short, effective review of the merits of the challenged agency action does not appear contingent on consideration of the contents of the two-page Nevada Order.

For all of the reasons stated above, the plaintiff's motion to supplement the administrative record is denied.

### B. EXTRA-RECORD REVIEW OF THE NEVADA ORDER IS NOT WARRANTED

The plaintiff seeks extra-record review of the Nevada Order on grounds that "the procedural validity of [the defendants'] action is in question." Pl.'s Mem. at 13. Extra-record review is reserved for situations where there are "gross procedural deficiencies." *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. The "gross procedural deficiencies" identified by the plaintiff are that the defendants failed: (1) "to comply with the mechanisms set forth in the governing statute and regulations" for revoking the land patent; and (2) to provide notice and an opportunity to be heard prior to issuing their decision. *See* Pl.'s Mem. at 1-2.

According to the plaintiff, the defendants "were proceeding on a purely extra-statutory and therefore unauthorized basis when they acted to deny [the plaintiff] its patent in land," *id.* at 14, because the defendants revoked the issuance of the land patent more than 30-days after the plaintiff was entitled to the land. In support of this aspect of the procedural deficiency argument, the plaintiff asserts the same allegations put forward in the First Claim For Relief, namely, that:

> The BLM's authority to withdraw any tract from sale is limited by both statute and regulation to 30 days after receipt of the purchaser's offer. The sale here occurred on June 4, 2012, when the BLM declared [the plaintiff] to be the purchaser as the high bidder. Thus, the 30-day sale withdrawal authority expired on July 3, 2012.

Compl. ¶ 32; *see id.* ¶ 31 (citing Section 203(g) of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1713 (g), and 43 C.F.R. § 2711.3-1 (f)). Clearly, the plaintiff's argument for extra-record review due to the defendants' alleged procedural violation of the agency's authority to revoke the land patent under FLPMA and its implementing regulation, s*ee* Pl.'s Mem. at 13-14, directly implicates the merits of this claim. The plaintiff's effort to resolve this claim in the guise of finding a procedural fault by the defendants sufficient to warrant extra-record review of the Nevada Order is plain. In this regard, the statute expressly allows a purchaser to waive the right to a decision within the thirty-day period cited by the plaintiff. *See* 43 U.S.C.A. § 1713 (g) ("The Secretary shall accept or reject, in writing, any offer to purchase made through competitive bidding at his invitation no later than thirty days after the receipt of such offer . . . *unless the offeror waives his right to a decision within such thirty-day period*."). The statute further provides that, prior to the expiration of the thirty-day period or any extended period, the DOI Secretary may refuse to accept any offer or may withdraw the land from sale "when he determines that consummation of the sale would not be consistent with this Act or other applicable law." *Id.* The plaintiff's agreement three times to extend the closing date may turn out, when the merits are reached, to constitute a waiver of the right to a decision within the statutory thirty-day period. For purposes of the pending motion, the plaintiff's agreement to three extensions of the closing date is sufficient to undercut any claim of a gross procedural irregularity warranting extra-record review of the Nevada Order.

The plaintiff further argues that extra-record review is necessary because the defendants failed to provide notice and a hearing opportunity, particularly when the defendants "were proceeding on a purely statutory and therefore unauthorized basis." *See* Pl.'s Mem. at 14. Had the agency notified the plaintiff that the agency intended to take jurisdiction over the matter, the

plaintiff would have been able to bring the Nevada Order to the agency's attention. Yet, as the

defendants point out, nothing in the statute or implementing regulation cited by the plaintiff

suggests an entitlement to procedural safeguards nor "require[s] the BLM to offer a pre-

decisional appeal." *See* Defs.' Opp'n at 13. While it may have been courteous to give the

plaintiff such notice, failure to extend a courtesy is not the type of "gross procedural deficiency"

that warrants extra-record review.

### C.   *THE COURT WILL NOT TAKE JUDICIAL NOTICE OF THE NEVADA ORDER*

Finally, the plaintiff urges that judicial notice of the Nevada Order is appropriate because

"the Order is the type of official government document frequently accorded judicial notice."

Pl.'s Mem. at 14. In support, the plaintiff cites *Koretoff v. Vilsack*, 841 F. Supp. 2d 1, 17 n.21

(D.D.C. 2012), in which the court took judicial notice of a Federal Register notice. As the

defendants point out, however, that case is easily distinguishable because statutory authority

expressly provides for judicial notice of "[t]he contents of the Federal Register." 44 U.S.C. §

1507; Defs.' Opp'n at 14.

The plaintiff also relies on *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72-

73 (D.D.C. 2008), but that case undercuts rather than supports the plaintiff's argument. In

*County of San Miguel*, the plaintiff sought to supplement the administrative record with multiple

documents. The court took judicial notice of a stipulation, which had been entered in prior

litigation involving the same parties and same subject matter, that two documents were properly

part of the administrative record, and concluded that the stipulation judicially estopped the

defendants from arguing the documents were properly omitted from the record. *Id*. at 72-73. By

contrast, here, the Nevada Order has not been the subject of any stipulation between the parties

and the defendants were not parties to the *City of Henderson* litigation, so judicial estoppel

simply does not apply.  Notably, the *County of San Miguel* court rejected the plaintiff's request

to take judicial notice of an Inspector General report since the plaintiffs "offered nothing more

than mere speculation and conjecture" that the document had applicability to the challenged

decision.  *Id.* at 79.  That circumstance more closely resembles the instant case and the ruling in

*County of San Miguel* counsels against taking judicial notice of the Nevada Order as an end-run

around the standards for supplementing the administrative record.

The plaintiff also cites Federal Rule of Evidence 201(b), which permits judicial notice of

"an adjudicative fact."  Pl.'s Mem. at 15.  The defendants object that this evidentiary rule "is not

designed to circumvent the standards applicable to administrative record review cases."  Defs.'

Opp'n at 13-14.  Judicial notice is "typically an inadequate mechanism" for a court to consider

extra-record evidence in reviewing an agency action.  *Dist. Hosp. Partners, L.P. v. Sebelius*, 971

F. Supp. 2d 15, 32 n.14 (D.D.C.  2013).  "Instead, a court may only consider an adjudicative fact

subject to judicial notice that is *not* part of the administrative record if it qualifies for

supplementation as extra-record evidence under *Esch*."  *Id.* (citing *Cnty. of San Miguel v.*

*Kempthorne*, 587 F. Supp. 2d at 78-79) (emphasis in original).  As the Nevada Order does not

qualify for supplementation of the administrative record or extra-record review, for the reasons

set forth above, the plaintiff's request for judicial notice of the Nevada Order is also denied.

## IV.     CONCLUSION

The plaintiff has failed to meet its burden of overcoming the strong presumption that the

defendants accurately designated the Administrative Record.  Accordingly, the plaintiff's motion

to supplement the administrative record, grant extra-record review, or take judicial notice of an

Order issued by a Nevada state court is denied.[3]

---

[3] In the event that the Court granted the plaintiff's motion, the defendants requested inclusion in the record of both
the Nevada Order as well as the related transcript of proceedings in the state court proceedings.  Defs.' Opp'n at 15-

An Order consistent with this Memorandum Opinion will be contemporaneously entered.


Date: July 24, 2014

_____
BERYL A. HOWELL
United States District Judge

---

16; *see id.*, Ex. A.  Since the plaintiff's motion is denied, the defendants' request for inclusion of the transcript of the state court proceedings is moot.